UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARCOS A. NIEVES,

                             Plaintiff,

          v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                             Defendant.
_____

<u>DECISION & ORDER</u>

17-CV-6569P

**<u>PRELIMINARY STATEMENT</u>**

        Plaintiff Marcos A. Nieves ("Nieves") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income Benefits ("SSI"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 13).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 8, 10). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

# DISCUSSION

## I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity to perform his past work; and

(5) if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

3

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.     **Parties' Contentions**

Nieves contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 8-1). Specifically, Nieves maintains that the ALJ improperly weighed the medical opinions of record and relied upon only those portions of the opinions and medical records favorable to her decision. First, he challenges the ALJ's Residual Functional Capacity ("RFC") assessment on the grounds that the ALJ improperly rejected the standing and walking limitations of Audwin Pangilinan, ("Pangilinan"), MD, his treating vascular surgeon. (*Id.* at 15-21). Next, Nieves contends that the ALJ's RFC is not supported by substantial evidence because she improperly rejected the more limiting portions of the consulting opinion authored by Yu-Ying Lin ("Lin"), MD, and cherry-picked the medical record to support her conclusions. (*Id.* at 21-24). Finally, Nieves maintains that the ALJ failed to adequately develop the record by requesting assessments authored by Nancy Stitzel ("Stitzel"), LCSW-R, his mental health counselor, that were referenced in the treatment notes. (*Id.* at 24-25).

The Commissioner maintains that the ALJ properly weighed the medical opinions of record and that substantial evidence supports her conclusions. (Docket # 10-1 at 24-29). The Commissioner further maintains that the ALJ was not required to attempt to obtain Stitzel's assessments. (*Id.* at 30-31).

4

**III.    Analysis**

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d))[1].  Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2); *see also Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (summary order) ("the ALJ [must] give controlling weight to the opinion of the treating physician so long as it is consistent with the other substantial evidence").  Thus, "[t]he opinion of a treating physician is generally given greater weight than that of a consulting physician, because the treating physician has observed the patient over a longer period of time and is able to give a

---

[1] This regulation applies to claims filed before March 27, 2017.  For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

5

more detailed picture of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must explicitly consider:

(1) the frequency of examination and length, nature, and extent of the treatment relationship,

(2) the evidence in support of the physician's opinion,

(3) the consistency of the opinion with the record as a whole,

(4) whether the opinion is from a specialist, and

(5) whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x at 199. The regulations also direct that the ALJ should "give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion." *Halloran v. Barnhart*, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(c)(2)); *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) ("[a]fter considering the above factors, the ALJ must comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion . . . [f]ailure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand") (citations and quotations omitted); *Wilson v. Colvin*, 213 F. Supp. 3d 478, 482-83 (W.D.N.Y. 2016) ("an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record") (alterations, citations, and quotations omitted). "This requirement allows courts to

6

properly review ALJs' decisions and provides information to claimants regarding the disposition of their cases, especially when the dispositions are unfavorable." *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594, *1 (N.D.N.Y. 2014) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

On April 22, 2016, Pangilinan completed a Physical RFC Questionnaire relating to Nieves. (Tr. 486-89).[2] He indicated that he provided treatment to Nieves every one to six months for a painful right great toe ulcer. (*Id.*). According to Pangilinan, Nieves's impairment was expected to last at least twelve months and would worsen if Nieves engaged in full-time work. (*Id.*).

Pangilinan opined that Nieves could walk approximately two blocks before needing a rest or experiencing severe pain, and that he could stand or walk less than two hours during an eight-hour workday. (*Id.*). According to Pangilinan, Nieves did not require a position that permitted him to shift from sitting to standing at will, but would need the opportunity to walk for ten minutes approximately every ninety minutes. (*Id.*). He further opined that Nieves would be able to occasionally lift and carry up to twenty pounds. (*Id.*). In his view, Nieves would be absent from work approximately three days a month as a result of the ulcer and its required treatment. (*Id.*). Pangilinan opined Nieves would be unable to sustain full-time employment at any exertional level. (*Id.*).

In her decision, the ALJ discussed the record evidence, including a brief description of Pangilinan's opinion. (Tr. 16). The ALJ gave Pangilinan's opinions regarding Nieves's lifting, carrying, sitting, crouching and climbing abilities "some weight" because they were generally consistent with Nieves's documented impairments. (*Id.*). The ALJ accorded "less weight," however, to the standing and walking limitations assessed on the grounds that the

---

[2] The administrative transcript shall be referred to as "Tr. __."

7

treatment records demonstrated "noted improvement" of Nieves's ulcer with conservative treatment, which suggested that Nieves's ability to walk and stand was not as limited as Pangilinan had opined. (*Id.*).

Pangilinan treated Nieves for his ulcer from July 2013 through April 2016. (Tr. 415-47). During that several-year period, Nieves's ulcer healed on several occasions, only to reoccur later. (Tr. 416, 422, 431, 434, 446). The last treatment note, dated April 1, 2016, suggested that the ulcer had healed, although Nieves's toe continued to have a "macerated" callus requiring debridement. (Tr. 445-47). Despite the absence of an ulcer, Pangilinan advised Nieves to continue to keep weight off his right foot and to apply the prescribed treatment, which included application of ointment and sterile dressing to the toe. (*Id.*). During that same visit, Nieves complained of ongoing toe discomfort and discussed with Pangilinan the possibility of amputation. (*Id.*). The treatment records reflect that Pangilinan routinely referred to Nieves's condition as "recurrent" (Tr. 433, 439, 445), and Pangilinan's opinion assessing the walking and standing limitations rejected by the ALJ was dated April 22, 2016, approximately three weeks after his last treatment note. (Tr. 489).

The ALJ's one-sentence explanation for discrediting Pangilinan's standing and walking limitations does not satisfy the treating physician rule because it does not constitute a "good reason" supported by the record. *See Ely v. Colvin*, 2016 WL 315980, *4 (W.D.N.Y. 2016) ("[h]aving reviewed the decision, the record, and [the physician's] opinion, I conclude that the three grounds provided by the ALJ for rejecting portions of [the physician's] opinion do not constitute 'good reasons'"). The ALJ discredited the limitations on the grounds that Nieves's ulcer had healed with conservative treatment. The record demonstrates, however, that although the ulcer had healed, Nieves's toe continued to require ongoing treatment from Pangilinan.

8

Further, the record demonstrates that the ulcer was a recurrent problem, which Pangilinan assessed would worsen if Nieves's engaged in full-time work. Finally, Pangilinan assessed the standing and walking limitations despite the apparent healing of the ulcer, suggesting that he believed that the standing and walking limitations persisted even in the absence of an existing ulcer.

The Commissioner maintains that the ALJ's determination to give little weight to Pangilinan's standing and walking opinion is supported by Nieves's documented failure to comply with treatment recommendations, as well as Pangilinan's relatively conservative treatment of the ulcer. (Docket # 10-1 at 25-26). Although a claimant's failure to comply with treatment recommendations and relatively conservative treatment may support an ALJ's determination to discount a claimant's allegations of pain or debilitating impairment, *see Wilson v. Colvin*, 2017 WL 2821560, *6 (W.D.N.Y. 2017) ("[i]t was within the ALJ's discretion to conclude that [p]laintiff's allegations of debilitating pain were undermined by her failure to follow up on the multiple – relatively conservative – treatment options offered to her"), on this record, neither Nieves's failure to comply with treatment nor the conservative nature of such treatment justifies the ALJ's rejection of the limitations assessed by Pangilinan. First, the ALJ's decision does not suggest that noncompliance was the reason for his rejection of Pangilinan's assessed limitations. *See Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) (summary order) ("[a] reviewing court 'may not accept appellate counsel's post hoc rationalizations for agency action'") (quoting *Snell v. Apfel*, 177 F.3d at 134). Moreover, the ALJ did not seek clarification from Pangilinan whether the limitations could be expected to persist even if Nieves was compliant or whether more aggressive treatment would alter his limitations or prognosis.

9

Although the ALJ may choose to give less than controlling weight to the standing and walking limitations assessed by Pangilinan, she must provide good reasons supported by the record for doing so. *See Drozdowski v. Colvin*, 2016 WL 5402698, *8 (W.D.N.Y. 2016) ("[t]here may be reasons to discount [the treating physician's] opinion or to give greater weight to other conflicting testimony and opinion evidence in the record, but the ALJ erred by failing to specifically state those reasons"). Because the ALJ failed to provide "good reasons" for rejecting the limitations assessed by Pangilinan, I find that remand is warranted. *See Halloran*, 362 F.3d at 33 ("[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion").

The ALJ's decision to reject the marked limitations assessed by the consulting examining psychiatrist Lin suffers from a similar infirmity. (Tr. 16, 270-73). Based upon a psychiatric evaluation, Lin opined that Nieves was able to follow and understand simple directions and instructions, could perform simple tasks independently and could learn new tasks, but was mildly limited in his ability to maintain attention and concentration and maintain a regular schedule, and was markedly limited in his ability to make appropriate decisions, relate adequately with others, and appropriately deal with stress. (Tr. 272-73). The ALJ rejected the marked limitations assessed by Lin on the grounds that the treatment notes reflected that Nieves's mental health had improved with treatment. (Tr. 16).

Stitzler's treatment notes, however, routinely documented that Nieves displayed abnormal mental status characteristics, including agitation, worthlessness, restlessness, anxiousness, depression, irritability, distractibility, and loud and pressured speech. (Tr. 291, 295,

300, 304, 308, 311, 314, 317, 325, 329, 332, 335, 338, 341, 346, 349, 356, 449, 460, 463, 471, 480). Although Prakash Reddy, MD, a psychiatrist who apparently met with Nieves twice to manage his medications, documented relatively normal mental status examinations during the two appointments, objective testing conducted by Stitzler after those appointments suggests that Nieves continued to suffer from severe anxiety and depression, despite treatment. (*Compare* Tr. 454-55, 467-68 *with* Tr. 459, 470). Again, although a basis for discounting the limitations assessed by Lin may exist, the ALJ failed to articulate one, and remand is thus warranted for this reason as well.

I decline to reach Nieves's remaining contentions. *See Erb v. Colvin*, 2015 WL 5440699, *15 (W.D.N.Y. 2015) (declining to reach remaining challenges to the RFC and credibility assessments where remand requiring reassessment of RFC was warranted).

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 10)** is **DENIED**, and Nieves's motion for judgment on the pleadings **(Docket # 8)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
September 20, 2018